# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | 2: 14-270 |
| | ) | |
| CHESTER AKINS, | ) | |
| ANTHONY PRYOR, | ) | |
| JAREL SPRINGER, | ) | |
| DONTE YARBOUGH, and | ) | |
| LANCE YARBOUGH, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OMNIBUS PRETRIAL MOTIONS ORDER

Pending before the Court in this large heroin conspiracy case are numerous pre-trial motions (with briefs in support) which have been filed by Defendants Chester Akins, Anthony Pryor, Jarel Springer, Donte Yarbough, and Lance Yarbough. (ECF Nos. 333, 334, 335, 337, 338, 339, 340, 341, 342, 343, 345, 346, 347, 348, 349, 350, 352, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 441, 442, 443, 444, 445, 446, 447). The government, with the Court's permission, has filed an omnibus response to the motions. (ECF No. 472). No remaining Defendant has filed a reply. Accordingly, the motions are ripe for disposition.

### I. Background

The genesis of this case is a criminal investigation into and the prosecution of a heroin distribution ring that Angie Morgan and her son Michael Milton allegedly operated out of the Duquesne, Pennsylvania area from 2006 to 2008. The conspiracy involved obtaining heroin from suppliers in New Jersey and New York and transporting it back to the Pittsburgh area for (re)-distribution. Morgan and Milton were ultimately convicted.

The conspiracy charged in this case is among the remnants of that organization. After Morgan and Milton were sentenced to prison, Christopher Thompson allegedly took over

leadership of the organization, which continued to purchase heroin from the New York and New Jersey areas. In doing so, they allegedly used vehicles with hidden compartments to transport pre-packaged heroin for (re)-distribution in the Pittsburgh area. Many of the individuals associated with this alleged conspiracy are from the Duquesne, Pennsylvania area.

The investigation into the so-called "Duquesne case" included Court-ordered Title III wiretap intercepts of communications of members of the allegedly conspiracy, including Christopher Thompson's younger brother, Corey Thompson, and some of his "top lieutenants," such as Donte Yarbough, Lawrence Short, Clinton Scott, and Jivonte Butler. The intercepted communications occurred in the second-half of 2011. According to the government, it has provided Defendants with all of the affidavits in support of the applications to intercept the communications, along with the rest of the supporting paperwork and the recordings of the intercepted communications.

Another investigative method used by the government was tracking devices on vehicles, including a Jeep Cherokee with a hidden compartment which traveled back and forth from the Pittsburgh area to New Jersey transporting heroin and money. In February 2012, the government apparently arranged for a stop of the Jeep Cherokee on the Pennsylvania Turnpike, which led to the seizure of more than 100 grams of heroin. Government agents thereafter observed Christopher Thompson meet with the driver and later recorded telephone calls and meetings among them. According to the government, it has provided Defendants with surveillance pictures along with the recordings of the telephone calls and meetings.

In addition to his purported role in the heroin conspiracy, Christopher Thompson also sold cocaine.[1] On March 6, 2012, a federal grand jury returned a one-count indictment against

---

1. On October 28, 2014, a federal grand jury in the Western District of Pennsylvania returned a one-count indictment against Christopher Thompson, which charged him with the crime of Conspiracy to Distribute and

2

Christopher Thompson, which charged him with the crime of Conspiracy to Distribute and Possess with the Intent to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Cocaine in and around February 2012, in violation of 21 U.S.C. § 846. *See USA v. Christopher Thompson*, No. 12-cr-53-JFC (W.D. Pa. filed March 6, 2012). Corey Thompson was also charged with this offense. *See USA v. Corey Thompson*, No. 12-cr-52-JFC (W.D. Pa. filed March 6, 2012). Both brothers ultimately pled guilty to their respective roles in that operation.

After the Thompson brothers were sentenced to prison, Donte Yarbough and Lawrence Short allegedly took over the operation and continued to purchase heroin from the New Jersey area through their supplier, Khayri Battle.[2] The government thereafter developed an informant who made various telephone calls in connection with this matter, and it tracked a rental vehicle that traveled back and forth from New Jersey. According to the government, it has provided Defendants with all of the records, surveillance pictures, and other evidence related to that portion of the alleged conspiracy.

The government, using a confidential informant, also executed search warrants at the home of Lance Yarbough and Raheem Brown, which revealed evidence of the alleged conspiracy such as heroin and firearms. According to the government, it has provided Defendants with the search warrant affidavits and pictures related to the execution of those warrants and made the actual physical evidence available to defense counsel. In addition, the

---

Possess with the Intent to Distribute One Kilogram or More of Heroin from in and around January 2009 to in and around February 2012 in violation of 21 U.S.C. § 846. This indictment purportedly relates to his involvement in the Duquesne case. At present, a change of plea hearing is scheduled on February 3, 2016.

2. On January 2, 2013, a federal grand jury in the Western District of Pennsylvania returned a one-count indictment against Khayri Battle, which charged him with the crime of Conspiracy to Distribute and Possess with the Intent to Distribute One Kilogram or More of Heroin from in and around December 2011 to on or about January 20, 2012 in violation of 21 U.S.C. § 846. On November 26, 2014, Battle pled guilty to Count One and received a sentence of 120-months imprisonment.

government has also provided Defendants with discovery related to several controlled purchases of heroin made by the confidential informant.

On December 9, 2014, a federal grand jury in the Western District of Pennsylvania returned a seven-count indictment against twelve defendants – seven of whom have since pled guilty. Chester Akins, Anthony Pryor, Jarel Springer, Donte Yarbough, and Lance Yarbough are the five remaining Defendants. Donte Yarbough is charged in Count One with Conspiracy to Possess with the Intent to Distribute and Distribute One Kilogram or More of Heroin, and in Counts Three and Five with Possession with the Intent to Distribute and Distribution of Heroin. Lance Yarbough is also charged in Count One with Conspiracy to Possess with the Intent to Distribute and Distribute One Kilogram or More of Heroin. Akins, Pryor and Springer are charged in Count One with Conspiracy to Possess with the Intent to Distribute and Distribute 100 Grams or More of Heroin.

**II. Discussion**

The principles of law governing an alleged drug conspiracy can be difficult to grasp. The Third Circuit Model Jury Instructions regarding the crime of "Conspiracy" illustrate the vast scope of the liability to which even a minor or tangential member may be exposed. "Conspiracy" is a criminal offense separate and apart from the underlying drug offenses that were the alleged objectives of the conspiracy in this case. It is a federal crime for two or more persons to agree or conspire to commit any offense against the United States, even if they do not ever actually achieve their objective.

A conspiracy is a type of criminal partnership. In order to establish the crime of conspiracy to distribute and possess with intent to distribute a controlled substance, the jury in

4

this case will be instructed that the government must prove each of the following elements beyond a reasonable doubt:

1. That two or more persons agreed to distribute and possess with the intent to distribute a controlled substance;

2. That a Defendant was a party to, or member of, that agreement; and

3. That a Defendant joined the agreement or conspiracy knowing of its objective to distribute and possess with the intent to distribute a controlled substance and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that said Defendant and at least one other alleged conspirator shared a unity of purpose and the intent to achieve those objectives.

The government must prove beyond a reasonable doubt that two or more persons knowingly and intentionally arrived at a mutual understanding or agreement, either spoken or unspoken, to work together to achieve the overall objective of the conspiracy. The government does not have to prove the existence of a formal or written agreement, or an express oral agreement spelling out the details of the understanding. The government also does not have to prove that all the members of the conspiracy directly met, or discussed among themselves their unlawful objective, or agreed to all the details, or agreed to what the means were by which the objective would be accomplished. The government is not required to prove that all members of the alleged conspiracy were named, or that all members of the conspiracy are even known to one another. What the government must prove beyond a reasonable doubt is that two or more persons in some way or manner arrived at some type of agreement, mutual understanding, or meeting of the minds to try to accomplish a common and unlawful objective.

The government must prove that each Defendant knew the goals or objectives of the agreement or conspiracy and voluntarily joined it during its existence, intending to achieve the common goals or objectives and to work together with the other alleged conspirators toward

those goals or objectives. However, the government does not have to prove that a Defendant knew everything about the conspiracy or that he knew everyone involved in it, or that he was a member of the conspiracy from the beginning. The government also does not have to prove that a Defendant played a major or substantial role in the conspiracy. On the other hand, evidence which reveals that Defendant only knew about the conspiracy, or only kept "bad company" by associating with members of the conspiracy, or was only present when it was discussed or when a crime was committed, is not sufficient to prove that he was a member of the conspiracy even if he approved of what was happening or did not object to it.

The acts or statements of any member of a conspiracy are treated as the acts or statements of all the members of the conspiracy, if these acts or statements were performed or spoken during the existence of the conspiracy and to further the objectives of the conspiracy. Therefore, a jury may consider as evidence against a Defendant any acts done or statements made by any member of the conspiracy, during the existence of and to further the objectives of the conspiracy. The jury may consider these acts and statements even if they were done and made in a Defendant's absence and without his knowledge.

There are different statutory maximum (and minimum) penalties for offenses involving different quantities of heroin. Therefore, the government must prove the amount of heroin involved in the alleged conspiracy beyond a reasonable doubt. However, it is the amount of heroin involved in the entire conspiracy charged – not the amount attributable directly to any individual Defendant – that must be so proven. *See United States v. Phillips*, 349 F.3d 138, 143 (3d Cir. 2003), *vacated and remanded on other grounds sub nom*, *Barbour v. United States*, 543 U.S. 1102 (2005). Once the jury makes a finding as to the drug quantity attributable to the

conspiracy as a whole, the sentencing judge determines, by a preponderance of the evidence, the drug quantity attributable individually to each convicted Defendant. *Id.*

With that background, the Court now turns to the pending motions of Defendants. The Court has elected to follow the "grouping" methodology employed by the government in its Omnibus Response as the most efficient and easiest to follow, for the convenience of all concerned.

**A. Discovery Motions**

Discovery in a criminal case is far different from that in a civil case. The government's obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure. Beyond Rule 16, the Jencks Act, and *Brady* and its progeny, however, a defendant has no general constitutional right to pretrial discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Those rights conferred by rule, statute, and case law cannot be used to compel the United States to disclose the minutia of its evidence, trial strategy, or investigation. *United States v. Fiorvanti,* 412 F.2d 407, 411 (3d Cir. 1969). The Court of Appeals for the Third Circuit has recognized that discovery in criminal cases is limited to those areas listed in Federal Rule of Criminal Procedure 16, "with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *United States v. Ramos,* 27 F.3d 65, 68 (3d Cir. 1994). Generally, these other areas are limited to the Jencks Act and materials available pursuant to the *Brady* doctrine. *Id.* The Court appreciates, and in some circumstances shares, Defendants' frustration(s) with these discovery limitations.

At the outset, the Court notes that the government has repeatedly acknowledged its obligations under *Brady* and its progeny, the Federal Rules of Criminal Procedure, and the

Jencks Act.  The government also represents that it has already disclosed substantial amounts of evidence in this case to Defendants, including the affidavits in support of the applications to intercept communications, the communications themselves, surveillance photographs, recorded telephone calls and meetings, and various other forms of discovery.  The Court is confident that the government is well aware of its continuing duty to provide material to Defendants, and that it will faithfully discharge its duty without "tacking too close to the wind."  *Kyles v. Whitley,* 514 U.S. 419, 439 (1995).  Bearing that background in mind, the Court will address the pending motions.

### 1. *Brady / Giglio* Material (ECF Nos. 333, 338, 345, 390, 441)

Defendants all request, in one form or another, that the Court order the government to produce all material and information that may be favorable to them on the issues of guilt and/or punishment.[3]  In response, the government acknowledges its (continuing) obligation to provide *Brady* information, but represents that it is not aware of any exculpatory material pertaining to any Defendant.  Accordingly, these motions of Defendants are **DENIED IN PART AND WITHOUT PREJUDICE** to the extent they seek *Brady* material.

As part of their *Brady* motions, Defendants also seek early disclosure of (impeachment) material that may be useful in cross-examining the government's anticipated trial witnesses, such as plea agreements, promises of immunity, criminal records, and payments to witnesses.[4]  In response, the government acknowledges its obligation to provide *Giglio* information and requests that the Court permit counsel to produce this material approximately three days before trial (it

---

3. In his motion to compel, Defendant Pryor moves the Court to direct the government to produce much more than *Brady* material.  The Court will address that aspect of his motion in greater detail below.

4. "Referred to as *Giglio* material, this evidence is a subset of *Brady* material insofar as it addresses situations in which certain evidence about a witness's credibility or motivation to testify exists, and where 'the reliability of a given witness may well be determinative of guilt or innocence.'"  *United States v. Maury*, 695 F.3d 227, 249 (3d Cir. 2012) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

anticipates relatively few witnesses – perhaps less than five – with *Giglio*-type disclosures). Although the Court encourages an earlier disclosure, it will not require the government to do so. Accordingly, Defendant's motions are **GRANTED IN PART** to the extent they seek disclosure of *Giglio*-type material.

### 2. Early Disclosure of Jencks Act Material (ECF Nos. 334, 346, 396, 442)

Defendants Akins, Lance Yarbough, Springer, and Donte Yarbough seek early disclosure of Jencks Act materials. Their requests range from thirty days to fourteen days before trial.

The Jencks Act, 18 U.S.C. § 3500(b), requires the government to disclose prior recorded statements of its witnesses, when related to the subject matter of their testimony, after each witness testifies on direct examination. *United States v. Weaver*, 267 F.3d 231, 245 (3d Cir. 2001). According to 18 U.S.C. § 3500(a), "no statement or report in the possession of the United States which was made by a government witness or prospective government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." The government has no duty to make an earlier disclosure.

The government recognizes that strict compliance with the Jencks Act could result in unnecessary interruptions or delays during the trial. As such, the government represents that it will voluntarily turn over this material three days prior to trial. The Court urges the government to disclose the applicable materials as early as practicable to avoid potential delays at trial, but it will not require the government to do so. Accordingly, Defendants' motions are **DENIED**.

### 3. Law Enforcement Notes (ECF Nos. 335, 342, 350, 399, 443)

Defendants seek preservation of the "rough notes" taken by law enforcement agents. *See United States v. Ramos*, 27 F.3d 65, 68-69 (3d Cir. 1994). The government acknowledges its

obligation to preserve such rough notes, but opposes any Order requiring it to disclose the rough notes to Defendants.[5] At the same time, however, the government represents that it will produce the agents' rough notes approximately three days before trial – a practice which eliminates the needs for the Court to get involved in the process. The Court will permit the government to follow that approach.

In accordance with the foregoing, the motions are **GRANTED IN PART** as to the preservation of notes and **DENIED IN PART AND WITHOUT PREJUDICE** as to the production of same to the Court for review in advance of trial.

### 4. Expert Witness Disclosures / Test Reports (ECF Nos. 339, 347, 445)

Defendants Pryor, Lance Yarbough, and Donte Yarbough seek an Order requiring the government to provide notice of its intent to seek admission of expert testimony. In response, the government represents that it will likely use expert testimony regarding the testing of the heroin;[6] the intercepted communications; and the language, methodology, and tools of the trade used by drug traffickers. Moreover, the government contends that some of this testimony / evidence may be admissible through lay witnesses, pursuant to Federal Rule of Evidence 701, without the need to designate an expert.[7]

Be that as it may, the government represents that it is well-aware of its ongoing obligations to provide Defendants with notice of its intent to seek admission of expert testimony,

---

5. The rough notes of law enforcement agents generally are not discoverable unless those notes, pursuant to Fed. R. Crim. P. 16(a)(1)(A), constitute the "substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." *See United States v. Fischbach and Moore, Inc*., 576 F. Supp. 1384, 1390 (W.D. Pa. 1983).

6. The government represents that it has already produced the laboratory reports and that it will provide to Defendants the resumes of the testifying laboratory technicians as trial approaches, assuming that the parties are unable to reach a stipulation. The Court strongly encourages all sides to pursue such a stipulation.

7. The Court reserves ruling on the government's position that such testimony may be presented by a lay witness. Should this case advance to trial, the Court anticipates that this issue may be the subject of a motion in limine.

the expert's qualifications, and the basis for opinions offered by the experts. And the Court has no reason to doubt that representation. At any rate, the government suggests that the Court set a deadline – approximately two weeks prior to trial – for the parties to submit expert materials.

The Court finds that two weeks provides Defendants sufficient time to evaluate the government's experts. In accordance with the foregoing, Defendants' motions are **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government.

### 5. Additional Discovery (ECF Nos. 338, 392)

Defendants Pryor and Springer seek numerous categories of discovery, which are either duplicative of earlier requests or are required to be turned over by the government under Federal Rule of Criminal Procedure 16. Neither Defendant alleges that the government has withheld any discovery. The government has repeatedly acknowledged its responsibilities under the Jencks Act, *Brady*, *Giglio*, and the Federal Rules of Criminal Procedure and represents that it has or will fully comply with those obligations. Accordingly, to the extent not directly addressed above, Defendants' discovery motions are **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government

### 6. Rule 404(b) / 609 Evidence (ECF Nos. 343, 340, 349, 352, 394, 446)

Defendants have requested the disclosure of evidence that the government intends to introduce at trial, pursuant to Federal Rules of Evidence 404(b). In response, the government states that the line between where evidence of the conspiracy ends and where evidence admissible under Rule 404(b) begins is not altogether clear. In doing so, the government points to evidence that it views as intrinsic to the crime charged, although it provides notice that it will argue, in the alternative, that the evidence is admissible under Rule 404(b) should the Court

disagree. At this point, the government represents that it is unaware of any other specific Rule 404(b) evidence that it will seek to introduce at trial, but it suggests that the Court set a deadline of approximately ten days before trial for disclosure of same. Accordingly, Defendants' motions are **GRANTED IN PART**, in accordance with the government's representation, to the extent that they seek an order requiring the government to disclose the Rule 404(b) evidence which it intends to use at trial. The government shall provide Defendants with notice of its intent to seek admission of evidence pursuant to Federal Rule of Evidence 404(b) no later than **fourteen** days before trial. To the extent that Defendants seek a pretrial hearing on the admissibility of Rule 404(b) evidence, their motions are premature and must await the further development of the record. Accordingly, those aspects of Defendants' motions are **DENIED IN PART AND WITHOUT PREJUDICE**, as a pretrial hearing is not yet warranted on this issue.

As part of their motions, Defendants (with the exception of Springer) have also requested the disclosure of evidence that the government intends to introduce at trial, pursuant to Rule 609. In response, the government notes that it does not know who the Defendants' witnesses will be, and therefore, it cannot comply with the notice requirement of Rule 609(b)(2). As for the Defendants, the government represents that it has already provided them with copies of their respective criminal records as part of the discovery process. In doing so, the government provides Defendants with the notice sought. Accordingly, Defendants' motions are **GRANTED IN PART**, in accordance with the government's representation.

### B. Bill of Particulars (ECF Nos. 337, 444)

Defendants Pryor and Donte Yarbough seek a Bill of Particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure "because the indictment is vague and indefinite" (their

motions are verbatim).[8] In doing so, Defendants request (1) the date, time, and specific place in which each offense alleged by the government had occurred; (2) the specific acts, conduct, methods, or means by which the crimes are alleged to have been committed; and (3) the specific locations of the defendant where he committed the acts alleged in this matter. The government opposes the motion, arguing that Defendants have more than sufficient information to inform them of the nature of the charge(s) and to allow them to prepare a defense. The Court agrees.

> Federal Rule of Criminal Procedure 7(f) provides, in relevant part, as follows:
>
> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

A district court has broad discretion in granting or denying a criminal defendant's motion for a bill of particulars. *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989). Among the purposes of a bill of particulars is to inform the defendant of the nature of the charges brought against him so that he is able to adequately prepare a defense. *United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012) (citing *United States v. Addonizio*, 451 F.2d 49, 63 (3d Cir. 1971)). Our appellate court has instructed that a district court should grant a motion seeking a bill of particulars when an indictment's failure to provide factual or legal information "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Rosa*, 891 F.2d at 1066. However, a defendant is not entitled to general discovery of the government's case, evidence or witnesses. *United States v. Armocida*, 515 F.2d 49, 54 (3d Cir. 1975)).

---

8. In his "wherefore" clause to this motion, Donte Yarbough requests, in passing, that the Court "compel[ ] the [g]overnment to provide him with the identity of any and all experts it intends to call at trial and the nature of expert testimony." (ECF No. 444). That request is repeated in his motion to compel (ECF No. 445), which the Court will address in greater detail below.

A bill of particulars should reveal "only the minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). In ruling on a request for a bill of particulars, a court should consider all information that has been disclosed to a defendant in the course of the prosecution, whether or not included in the indictment. *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir. 1972).

In exercising its discretion in this case, the Court concludes that a bill of particulars is not warranted. The government has produced voluminous pretrial discovery: affidavits in support of search warrants and Title III intercepts that outline, in considerable detail, the evidence gathered during this investigation as well as line sheets that summarize pertinent intercepts and recordings of same. The government has also provided access to other discovery in this case, including the drugs and firearms seized, surveillance photographs, and laboratory reports. The indictment also adequately apprises Defendants of the pending charge(s), and the alleged drug conspiracy is straight-forward. Although there are numerous alleged co-conspirators, it is not incumbent upon the government to prove the role(s) played by each Defendant. Under these circumstances, Defendants' claim(s) that they are "unable to prepare an intelligent defense to the [i]ndictment as to the scope of [their] involvement in this case is unclear" is simply without merit. Accordingly, Defendants' motions are **DENIED**.

### C. Confidential Informants (ECF Nos. 341, 447)

Defendants Pryor and Donte Yarbough request that the government disclose the identity of, contact information for, and any and all prior testimony of unindicted co-conspirators and/or confidential informants. In response, the government represents that it will provide Defendants with the relevant statements of any indicted/unindicted co-conspirator and/or confidential

informant that will testify at trial at least three days in advance, along with material useful in cross-examining those individuals.

Once again, the Court urges the government to disclose the applicable materials as early as practicable to avoid potential delays at trial, but it will not require the government to do so. Accordingly, to the extent not directly addressed above, Defendants' motions are **DENIED WITHOUT PREJUDICE** to reassert in the context of a specific alleged breach by the government.

### D. *James* Hearing (ECF No. 348)

Defendant Lance Yarbough seeks a pretrial hearing to determine the admissibility of statements of alleged co-conspirators pursuant to Fed. R. Evid. 801(d)(2)(E) – often referred to as a *James* hearing. *See United States v. James*, 590 F.2d 575 (5th Cir. 1979); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). A *James* hearing is not required in every case, but is within the discretion of the Court.

The government contends that such a hearing would be protracted, time-consuming and duplicative of the trial on the merits. It also argues that the admissibility of co-conspirator statements should be decided at trial.

The Court agrees with the government that a pretrial hearing is not warranted under the facts and circumstances of this case. There is substantial evidence of the existence of a drug conspiracy in this case, as reflected by the guilty pleas of a significant number of the Defendants charged in this case. Moreover, in *Government of Virgin Islands v. Brathwaite*, the Court explained that "the prosecution must lay a foundation for the admission of co-conspirator testimony by establishing the existence of a conspiracy that included the defendant or defendants," but noted that there is a distinction between the crime of conspiracy and the

"coconspirator exception to the hearsay rule set forth in Federal Rule of Evidence 801(d)(2)(E)." 782 F.2d 399, 403 & n.1 (3d Cir. 1986). In *United States v. Giampa*, the court explained: "a practical evidentiary rule has developed whereby a co-conspirator's statement is conditionally admitted into evidence, subject to the Government's obligation to prove the conspiracy's existence and each conspirator's participation therein before the close of the Government's case." 904 F. Supp. 235, 286 (D.N.J. 1995). "In the event the Government fails sufficiently to connect the defendant to the conspiracy, the 'connection up' rule of admitting co-conspirator statements can lead to a mistrial." *Id.*

This procedure appears to be eminently practical in this case, and it will be the government's burden to "connect up" each Defendant at trial. Accordingly, Defendant Lance Yarbough's motion for a pretrial *James* hearing regarding the admissibility of co-conspirator statements is **DENIED**.

### E. Motion to Suppress Title III Wiretap Evidence (ECF No. 398)

Defendant Springer moves the Court to suppress the wiretap evidence "because it was obtained by law enforcement in violation of [his] constitutional rights." In essence, Springer surmises, in conclusory fashion, that the government failed to comply with the legal requirements to obtain authorization to intercept communications. For instance, Springer alleges that the applications lacked probable cause and failed to satisfy the "necessity" requirement, that the intercepted communications were not properly sealed, that the government did not have proper authorization from the Department of Justice, and that the affidavits contains false and misleading information (although he does not identify what information is false and/or misleading).

In response, the government attaches as exhibits the affidavits in support of the Title III applications (Exs. A-D), the sealing orders in this case (Exs. E-I), and the Department of Justice's letters authorizing the applications for interception orders (Exs. J-M)—all of which it produced to Defendants during discovery.

The Court finds Spinger's boilerplate motion wholly without merit. The material submitted by the government demonstrates that it properly sought and obtained authorization to intercept the co-conspirators' communications and properly sealed the material according to its legal requirements. As such, Springer's motion is **DENIED**.

### III. Conclusion

A Pre-Trial Conference in this matter is hereby scheduled on Tuesday, February 9, 2016 at 1:30 PM in Courtroom 6C, United States Courthouse, 700 Grant Street, Pittsburgh, PA 15219, at which Defendants shall appear in-person.

**SO ORDERED**, this 1st day of February, 2016.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Court Judge